LODGED
CLERK, U.S. DISTRICT COURT
8/5/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___LM___ DEPUTY

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
August 5, 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: D. Brown DEPUTY

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| WILLIE JAMES BOWEN JR | ) Case No. 5:21-mj-00518 |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of August 3, 2021 in the county of Riverside in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assault on Federal Employee |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

/s/ pursuant to Fed. R. Crim. P. 4.1
*Complainant's signature*

Dean Escanuelas, Postal Inspector/USPIS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: August 5, 2021

*Judge's signature*

City and state: Riverside, California    Honorable Kenly Kiya Kato, United States Magistrate Judge
*Printed name and title*

AUSA: Christian Acevedo: x26922

**AFFIDAVIT**

I, Dean Escanuelas, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for Willie James BOWEN JR ("BOWEN") for a violation of Title 18, United States Code, Section 111(a)(1) (Assault on Federal Employee).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel, including the Rialto Police Department ("RPD"). This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND FOR POSTAL INSPECTOR ESCANUELAS

3. I am a United States Postal Inspector ("Postal Inspector") employed by the Los Angeles Division of the United States Postal Inspection Service ("USPIS"), San Bernardino Domicile, External Crimes Team. I have been so employed since August 2006. My responsibilities include the investigation of crimes against the United States Postal Service ("USPS") and crimes related to the misuse and attack of the mail system and assaults and threats against USPS employees, including: theft of

1

United States mail ("U.S. Mail"); possession of stolen U.S. mail; crimes related to the use, theft, and counterfeiting of postal keys (referred to as "arrow keys") and locks; access device fraud; and identity theft. Additionally, I have received both formal and informal training from the USPIS regarding mail and identity theft.

4. Through my training and experience, I have learned that USPS delivers U.S. Mail to residents in neighborhoods via individual, community mailboxes, and post office boxes ("P.O. Boxes"). The USPS also provides blue collection boxes as a convenient way for USPS customers to place outgoing mail for pickup by USPS employees.

### III. SUMMARY OF PROBABLE CAUSE

5. On August 3, 2021, USPS Postal Carrier F.V. was delivering mail in the city of Rialto, California. At approximately 1:15 p.m., F.V. was delivering mail on Elm Court in Rialto, California, and pulled up to a house on the south side of the street. F.V. was sitting in his USPS truck and parked alongside the curb to speak to a resident. As F.V. spoke to the resident, BOWEN approached and placed himself between F.V. and the resident. BOWEN told F.V. that he was angry because F.V. did not deliver mail to his home that day. Within seconds, BOWEN made physical contact with F.V. F.V. recalled BOWEN grabbing F.V. by the arm and the shirt, and yanking him from the vehicle, leaving F.V. hanging halfway out of his USPS truck. Another witness recalled BOWEN punching F.V. F.V. called RPD officers and then drove down the street to create

distance between himself and BOWEN, but BOWEN followed him anyway.

## IV.   STATEMENT OF PROBABLE CAUSE

6.   Postal Inspectors Brad Barnes, Gabriel Rodriguez, and I interviewed the victim USPS letter carrier, F.V. and a local resident who witnessed the incident ("WITNESS 1") Based on my conversations with F.V., WITNESS 1, other law enforcement officers, and my own observations and knowledge of the investigation, I am aware of the following:

### A.   F.V. Delivers Mail on Elm Court and Skips BOWEN's Home

7.   On August 3, 2021 at approximately 1:15 p.m., F.V. pulled onto Elm Court in Rialto, California to deliver mail. F.V. was driving his USPS truck, which positions the driver on the right-hand side of the truck (opposite side of an ordinary American car) and at the time, had the window and door on the driver's side open (a position which the driver can maintain while operating the vehicle), leaving the driver exposed.

8.   As F.V. was delivering mail, he remained seated in his truck, reaching for mailboxes and inserting mail inside without leaving the truck.  As he was doing so, F.V. noticed a home on the north side of the street had its mailbox blocked by a parked car.  Based on F.V.'s knowledge of USPS protocols and policy, F.V. decided that he would not deliver mail to that home on that day, due to the car blocking access to the mailbox.  F.V. finished delivering mail to the remaining homes on the north side of the street, and then made his way to the south side of Elm Court.

3

9. As F.V. delivered mail on the south side of Elm Court, he eventually reached a home across the street from the house he had previously skipped. F.V. placed his USPS truck into park at this point to speak to a customer as he remained seated in his USPS truck. As F.V. spoke to the customer, he noticed a man (later identified as BOWEN) and woman (later identified as BOWEN's mother) standing in the yard of the house he had previously skipped. BOWEN then began walking across the street towards F.V.'s USPS truck. At this point, BOWEN walked around the front of the USPS truck and approached the driver's side (parallel to the curb).

    **B.**    **BOWEN Confronts F.V. for Skipping his House**

10. BOWEN appeared angry and was shouting, asking F.V. why he did not deliver mail to his mother's house. F.V. told BOWEN a car was blocking the mailbox and that it was a safety issue for F.V. to get out of the postal truck. BOWEN yelled at F.V. saying, "you the mailman. Get off your ass and deliver!" At this point, F.V. said to BOWEN, "you are making this worse for your mother. I can hold her mail at the Post Office and refuse to deliver if you are going to cause problems. I am out of here." BOWEN became visibly agitated at this point and yelled, "no you're not!"

11. BOWEN then grabbed F.V.'s arm with one hand, and the front of F.V.'s shirt with the other hand and attempted to drag F.V. from the USPS truck. Because F.V. was still wearing his lap belt, he was caught hanging with the top half of his body hanging out of the USPS truck, and the bottom half still secured

by the lap belt.  BOWEN then grabbed F.V.'s arm and continued to yank, trying to pull F.V. out of the USPS truck.  F.V. believes it is possible that BOWEN attempted to punch him during this encounter, but he cannot recall if or where any punches landed on his body.  BOWEN's mother approached at this point and began pleading for BOWEN to stop.  F.V. heard BOWEN's mother pleading with BOWEN to stop.

12.  F.V. called RPD officers and his supervisor to report the incident.  F.V. then drove a couple of houses down to create distance between himself and BOWEN, but BOWEN followed him and began recording F.V. on his smartphone.  As BOWEN recorded F.V. on his smartphone, Bowen [F.V.] began yelling "this the mailman, won't deliver, I'm gonna show him" or words to that effect.  As F.V. waited for police to arrive, F.V.'s supervisor contacted Postal Inspector Brad Barnes.

### C. Postal Inspectors Arrive and Interview Witnesses

13.  Inspector Barnes, Inspector Gabriel Rodriguez, and I responded immediately and arrived within minutes.  When we arrived, RPD officers had just arrived and had restrained BOWEN.  Upon arrival, I saw a local resident, WITNESS 1, speaking with F.V.  I interviewed WITNESS 1 and WITNESS 1 told me that WITNESS 1 was outside when BOWEN attacked F.V.  WITNESS 1 said he overheard BOWEN ask F.V., "why didn't you give us our mail?" and then saw BOWEN lean into the USPS truck and punch the carrier approximately three times.  WITNESS 1 also saw BOWEN's mother standing next to BOWEN telling him to stop.  WITNESS 1 heard

5

F.V. shout, "stop, stop!" but WITNESS 1 did not want to get physically involved.

14. I also interviewed Bowen's mother, who was outside with BOWEN when I arrived. Bowen's mother said that, when the USPS carrier did not deliver mail to their house, BOWEN approached the carrier and began "talking rough" to F.V. BOWEN's mother told me that she saw BOWEN reach into the USPS truck and grab F.V.'s shirt, but that BOWEN stopped when BOWEN's mother told him to stop.

### D. BOWEN Tells Postal Inspectors About Confrontation

15. RPD officers transported BOWEN back to the local RPD station. At the station, Inspector Barnes and I approached BOWEN and advised BOWEN of his Miranda Rights. BOWEN stated that he wanted a lawyer and we terminated the interview. As we were standing near BOWEN, BOWEN continued to attempt to get our attention and began shouting things at us. Inspector Barnes and I repeatedly reminded BOWEN that he requested a lawyer and advised him to not speak about the incident. Despite these admonishments, BOWEN continued to shout things at us.

16. BOWEN said that he was upset that F.V. did not deliver his mother's mail, and that he and F.V. had an argument about it. BOWEN said he may have touched F.V. during the argument, but that he did not harm him, and that F.V. was not hurt.

//
//

## V. CONCLUSION

17. Based on the foregoing facts, there is probable cause to believe that Willie James BOWEN JR committed a violation of Title 18, United States Code, Section 111(a)(1) (Assault on Federal Employee).

Subscribed to and sworn before me this 5th day of August 2021

_____
HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE